J. O. WESCOTT, PLAINTIFF IN ERROR, V. DAVID ARCHER, DE-
FENDANT IN ERROR.

1. Attachment: ISSUING SUMMONS.   Where the real estate of a
   debtor is levied upon under an attachment, and an affidavit is
   filed stating that he is a non-resident, and service of summons
   cannot be made upon him in the state, no summons need be
   issued.
2. ——: SERVICE BY PUBLICATION.   Where an attachment is
   levied upon the real estate of a non-resident, and service of sum-
   mons is not made upon him, the court possesses no power to
   render judgment against him and order a sale of his property
   to satisfy the same, unless publication has been made as re-
   quired by law, and the notice should contain a description of
   the property attached.
3. Proof of Publication.   The publisher of a newspaper, or any
   one acquainted with the facts, may make proof of publication.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*Harwood & Ames,* for plaintiff.

*W. J. Lamb (H. H. Wilson* with him) for defendant.

MAXWELL, J.

This is an action of ejectment. Judgment was rendered in favor of the defendant in the court below. The plaintiff brings the cause into this court by petition in error. It appears from the record that one Emma L. Wright is the common source of title of the plaintiff and defendant, and that on the 15th day of March, 1879, she conveyed the premises in controversy to the plaintiff; that on the 16th day of August of that year, Sampson, Wilkinson & Co. commenced an action against the plaintiff, in the district court of Lancaster county, to recover the sum of $140.40, and caused the lands in dispute to be attached; that afterwards judgment was rendered in said action, and the lands in controversy sold to one Hume; that said sale was confirmed, and a deed made by the sheriff to said Hume, who afterwards, by his attorney in fact, conveyed to the defendant.

It is conceded that the plaintiff was a non-resident of the state, and that service of summons could not be made upon him; that a sufficient affidavit for an attachment was duly filed; and that all the proceedings in that action are regular except that no summons was issued for the plaintiff in error (defendant below); and it is claimed that the notice of publication, and the proof of the same, are insufficient. When a defendant is a non-resident of the state, and service of summons cannot be had upon him therein, no summons need be issued, as the law does not require a vain thing.

It is very strenuously insisted by the defendant in error, that even if we find the notice so defective as to be

invalid, that no notice was necessary to authorize the court to render a valid judgment in an action by attachment, where the object is to subject the property attached to the payment of the judgment.

In the case of *Paine v. Moreland*, 15 Ohio, 435, the action was ejectment. The defendant claimed title under a sheriff's deed, made in pursuance of a sale under the attachment, no notice having been given. The court held that the proceedings were not void, but voidable. In the opinion it is assumed that because the statute gives the court the right to sell perishable property, it therefore has the right to dispose of property without notice, whether it is perishable or not. The court overlooks the fact that the only reason a court is authorized to sell perishable property is because the property being taken out of the custody of the debtor and placed in the custody of the law, therefore the court, for the purpose of caring for the property, is a bailee, and it is its duty to see that the property is not lost or destroyed. The right to sell the property in such case grows out of the care that the law exercises for the protection of the property or its proceeds for the benefit of the party entitled to the same, and not from any authority to condemn the title, and divest the title from the owner thereof without giving him opportunity to be heard. The language of the statute is: "The court shall make proper orders for the preservation of the property during the pendency of the suit. It may direct a sale when, because of its perishable nature, or the costs of keeping it, a sale will be for the benefit of the parties." Comp. St., 558. The object is to prevent loss as far as possible, and not to determine who is entitled to the proceeds of the sale. But the authority to sell perishable property would confer no right to sell property as such that clearly was not perishable, such as real estate, and a judgment of that kind would be void.

But a logical deduction from the opinion of the court in the case cited is, that if the court decided that real estate—wild land—was perishable property, and therefore ordered a sale of the same before judgment, the sale would be a mere irregularity, and, if not reviewed on error, would be valid. It is said the court acquires jurisdiction by its own process; that the writ draws the person or thing within the power of the court; and that this confers jurisdiction. That is true in all cases where the process of the court has been legally served upon the defendant, but it is not correct if it is sought to condemn the property of a party without a hearing. To hold that a court, by the simple levying of its process upon the property of a debtor, may then proceed without notice to render judgment against such debtor, and sell his property to satisfy the same, is to hold that the constitutional guaranty, that no person shall be deprived of his property without due process of law, is of no effect. Can it be said that a party whose property has thus been condemned has had his day in court? The fallacy of the reasoning in such case is in saying that because the property was under the control of the court, it therefore had authority to render judgment against the defendant and sell his property to satisfy the same.

Suppose the defendant was a resident of the state, and an attachment was secretly issued out of the district court and levied upon his property, but no service had upon him, could the court proceed to find that he was a non-resident of the state, and thereupon proceed to render judgment against him and order his property, taken under the attachment, to be sold? If the doctrine laid down in the case of *Paine v. Moreland* and cases following it, is correct, it could do so, because the court had acquired jurisdiction by the attachment of the debtor's property. How can it be said that a court has authority to hear a cause, unless the parties to be affected are before the court, either by appear-

ance, or by actual or constructive service? If there is no action against a party, there can be no condemnation of his property; and where there is no appearance, no action can proceed to judgment without actual or constructive service upon the defendant. The attachment is merely for the purpose of retaining the property in the custody of the law until it is determined whether the plaintiff is entitled to recover.

If a plaintiff can commence an action by attachment against a non-resident, cause his property to be levied upon and sold without giving him an opportunity to appear and defend the action, a wide door will be opened for the perpetration of fraud, and the court become the instrument for its accomplishment. A plaintiff with a valid cause of action has nothing to fear from the publication of notice, while a court with proof of proper service on file has the assurance that the law has been complied with, and that it is not being used as a medium to unjustly deprive a party of his property. We hold, therefore, that where an attachment is levied upon property, and there is no personal service, there must be a service by publication to give the court jurisdiction, and no judgment is valid without such notice. *King v. Harrington,* 14 Mich., 532. *Miller v. Babcock,* 29 Mich., 526. *Anderson v. Coburn,* 27 Wis., 558.

Such notice should, in some way, describe the property attached. If real estate is taken, it should be described in such manner as to identify it. The object is publicity, and this can best be obtained by an accurate description of the property levied upon. The notice in this case is wholly defective in this regard, there being no attempt to describe the property attached.

The notice is also defective in not being intelligible, many of the words being but little better than blanks.

Objection is made to the proof of publication. The affidavit was made by the publisher of the Lincoln *Globe,*

and this is sufficient, under our statute, as any person knowing the facts may make the proof. And where a competent person makes an unequivocal oath of the fact, he will be presumed to possess the knowledge necessary to make it.

For the reason that no valid notice of the pendency of the action under the attachment, by describing the property attached, was given, the judgment is reversed and cause remanded for further proceedings.

REVERSED AND REMANDED.

LAKE, CH. J., dissenting.

Upon the main branch of this case, I find myself unable to concur in the foregoing opinion. The conclusion therein arrived at, that the judgment is void, for the simple reason that the published notice of the bringing of the suit was "defective" in the omission of a "description of the property levied upon," is to my mind a novel one, and unsupported by any adjudged case under a statute similar to our own to which our attention has been called. It is, as I think, unfounded in reason, and does violence not only to the plain language of our attachment law, but also to the previous ruling of this court, upon precisely the same question.

The infirmity in the position taken by the majority of the court is radical. It lies in the unwarranted assumption that the notice in question was what gave the court its jurisdiction over the attached property. To show that this assumption is not sanctioned, I will refer to some of the provisions of our attachment law bearing upon the question.

And, first, sec. 198 of the civil code, provides that: "The plaintiff in a civil action for the recovery of money may, at or after the commencement thereof, have an attachment against the property of the defendant, and upon the grounds herein stated," etc. One of the grounds

stated is: "When the defendant, or one of several de-
fendants, is * * * * a non-resident of this state."

Sec. 199 provides that: "An order of attachment shall
be made by the clerk of the court in which the action is
brought, in any case mentioned in the preceding section,
when there is filed in his office an affidavit of the plain-
tiff, his agent, or attorney, showing: *First*. The nature
of the plaintiff's claim. *Second*. That it is just. *Third*.
The amount which the affiant believes the plaintiff ought
to recover. *Fourth*. The existence of some one of the
grounds enumerated in the preceding section."

Sec. 205 is mandatory to the sheriff, who, upon receiv-
ing the order of attachment, must serve it "without de-
lay" by a seizure of the property when that is pos-
sible. Where the property attached is real estate, he
must "leave with the occupant thereof, or, if there be no
occupant, in a conspicuous place thereon, a copy of the
order." But, if it be personal property, and accessible,
"he shall take the same into his custody, and hold it sub-
ject to the order of the court." This done, the property
so seized is in *custodia legis*, for sec. 212 in express terms
provides that: "An order of attachment binds the prop-
erty attached from the time of service;" and, sec. 218,
that: "The court shall make proper orders for the pre-
servation of the property during the pendency of the suit,"
even to the extent of directing its sale, "when, because of
its perishable nature, or the cost of keeping it, a sale will
be for the benefit of the parties."

Now, by the light of these provisions, is it not manifest
that the jurisdiction of a court over attached property,
under our statute, depends, not upon a notice to the de-
fendant of the pendency of the action, by summons, or
by publication, but upon the fact of a proper affidavit
having been filed for the issuing of the order under which
it was seized? Can property be so bound, and subjected
to such orders, and still the court be, as my brethren

hold, without jurisdiction over it? Can the court by an interlocutory order direct the sale of attached property, for any reason, without the assent of the owner, whereby the title may be transferred from him to the purchaser, and this without possessing any jurisdiction over it? Surely not. If the right to exercise such powers over the property of a debtor be not jurisdiction, what is it? Webster's definition of the word jurisdiction, when used with reference to judicial power is, "the right of administering justice through the laws, by the means which the laws have provided for that purpose." It seems to me that the authority given to courts over attached property from the time of its seizure, independently of whether jurisdiction over the person of the defendant has been acquired or not, falls clearly within this definition.

The majority of the court seem to have forgotten that, in an attachment case, the jurisdiction may be twofold—that over the person, and that over the property seized—and that neither one is really dependent upon the other. Over the person jurisdiction can be required only by the service of a summons, or a voluntary appearance; while over the property it is obtained by an actual seizure, under a writ lawfully issued.

It is conceded in the opinion of the court, prepared by my brother Maxwell, "that a sufficient affidavit for an attachment was duly filed, and that all the proceedings, save the published notice to the defendant, were regular." This concession, as I think, is fatal to the conclusion to which the court has come. It shows conclusively that there was good ground for issuing the order of attachment, and that the property was lawfully seized and brought within the control of the court. It establishes, beyond all cavil, that the property was in the custody of the law, and subject to the orders of the court respecting it. This being so, while those orders may have been erroneous, and therefore voidable, they very clearly were not void.

My associates, however, concede that the court, without the knowledge of the defendant, could sell perishable property, but contend that it had no authority "to sell property, as such, that clearly was not perishable." But why not, pray? The statute before quoted provides that a sale may be ordered when the property is perishable, or when the expense of keeping it may be great, and a present sale beneficial. But who is to determine the existence of the facts on which the right to make the order to sell depends? Why the very court under whose control the property is. But suppose the court should commit a palpable error in this respect, and order a sale of property which was neither perishable, nor the cost of keeping it considerable, would the sale therefore be·a nullity? According to the reasoning in the opinion of the majority of the court, where the ground is taken that the jurisdiction to sell depends upon the perishable character of the property, and not upon a seizure under a lawful writ, it would. I believe, however, that the sale would be valid, and that the purchaser would take a good title under it. As was said by this court in *Crowell v. Johnson*, 2 Neb., 146. "The court had acquired jurisdiction of the property *by the levy of the order of attachment thereon*. The necessary affidavit for the attachment had been filed, and order duly issued and levied, whereby the property of the debtor was taken from him, and placed in the custody of the law." This done, the fact that it was possible for the court to commit errors respecting it, or that it may have done so, could not have the effect to overthrow the jurisdiction thus acquired.

And the same is true of the subsequent notice published to the absent defendant. Being beyond the jurisdiction of the court, although his property was within it, he was entitled to such notice as the statute provided should be given, but only because the statute required it, it being a proceeding *in rem*. There is nothing in the nature of

23

such proceedings that renders the publication of a notice essential, and the legislature could, doubtless, dispense with it altogether if they should see fit to do so. In the case last cited this court expressly held that although the published notice failed to conform to the requirements of the statute, the proceeding was not for that reason void, but only voidable. "It may be reversed in a proceeding instituted for that purpose, but it cannot be assailed collaterally."

Drake, in his work on Attachment, section 437, says upon this subject: "This notice is not necessary to give the court jurisdiction of the action. * * * * Whether a court has jurisdiction of any particular proceeding is determined by establishing its authority to take the first step therein. * * * * When, therefore, in an attachment cause the ground required by statute has been laid for the issue and execution of the process, and the process has been issued and executed, the jurisdiction of the court has attached. If this ground be not laid, there is no right to take the first step, and that and all subsequent ones are void. When, however, jurisdiction has been attained, the subsequent proceedings must conform to the law in order to make the action of the court effectual. Want of such conformity will be error, and, therefore, good ground for reversing the judgment of the court; *but it will not make the proceedings void.*"

Applying the law thus clearly set forth to the case under consideration, it is very clear to my mind that the judgment of the court below should be affirmed. The ground for the "*first step*" was well "laid" by the filing of the necessary affidavit; the process of the court—the order of attachment—was duly issued and the property seized. This gave the court jurisdiction. I see no reason for disregarding the former decisions of this court, especially when in harmony with those of other states under statutes similar to ours. See Drake on Attachment, section 448, and cases cited.